1  ANDRÉ BIROTTE JR.
   United States Attorney
2  LEON W. WEIDMAN
   Assistant United States Attorney
3  Chief, Civil Division
   ELIEZER BEN-SHMUEL
4  Special Assistant United States Attorney
   California Bar Number: 160789
5        Room 7516 Federal Building
         300 North Los Angeles Street
6        Los Angeles, California 90012
         Telephone:   (213) 485-0439, ext. 5428
7        Facsimile:   (213) 253-9505
         Email:   eliezer.ben-shmuel@usdoj.gov
8
   Attorneys for Respondent ERWIN MEINBERG
9

10

11              UNITED STATES DISTRICT COURT

12         FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                  WESTERN DIVISION

14

15  STEPHEN YAGMAN,                ) Case No.: 10-5860-SVW-CWx
                                   )
16           Petitioner,           )
                                   ) RESPONDENT'S ANSWER TO PETITION
17      vs.                        ) FOR WRIT OF HABEAS CORPUS
                                   ) PURSUANT TO 28 U.S.C. § 2241
18  ERWIN MEINBERG, Acting Warden, )
                                   )
19           Defendant            )
                                   )
20

21       Respondent ERWIN MEINBERG, Acting Warden of the

22  Metropolitan Detention Center in Los Angeles, California, by and

23  through his attorney of record, the United States Attorney for

24  the Central District of California, hereby files this Answer To

25  Petitioner Stephen Yagman's petition for writ of habeas corpus

26  pursuant to 28 U.S.C. § 2241.  As explained in the attached

27  Memorandum of Points and Authorities, the petitioner has not set

28  forth any basis for relief and the petition should be denied.

1   This Answer incorporates the attached memorandum of points
2   and authorities, the attached declaration of Randy McWilliams
3   and accompanying exhibits, the attached declaration of Sarah
4   Schuh and accompanying exhibits, the files and records in this
5   case, and such other evidence or argument as may be requested by
6   the Court.

7   DATED: October 7, 2010          Respectfully submitted,

8                                   ANDRÉ BIROTTE JR.
                                    United States Attorney
9                                   LEON W. WEIDMAN
                                    Assistant United States Attorney
10                                  Chief, Civil Division

11

12

13                                  _____
                                    ELIEZER BEN-SHMUEL
14                                  Special Assistant United States
                                       Attorney
15                                  Attorneys for Respondent
                                    ERWIN MEINBERG
16

17

18

19

20

21

22

23

24

25

26

27

28

Yagman v. Meinberg                          Answer to Petition for
Case No. 10-5860-SVW-CWx                     Writ of Habeas Corpus
                              ii

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................ 1

II.  FACTS ...................................................... 2

    A.   Background ........................................... 2

    B.   Inmate Disciplinary Process .......................... 2

    C.   Incident Leading to Discipline ....................... 4

    D.   Center Discipline Committee Hearing .................. 5

    E.   The Administrative Remedy Process ................... 8

III. ARGUMENT ................................................... 8

    A.   Due Process Standards in Prison Disiplinary

        Proceedings .......................................... 9

    B.   Petitioner's Due Process Rights Weren't Violated ... 10

        1.  Petitioner was served with Written Notice

           of the Charges More than 24 Hours before

           the Disciplinary Hearing ...................... 11

        2.  Petitioner Right to Call Witnesses

           was not Violated ............................. 12

    C.   The Disciplinary Hearing Officer's Decision

        Must be Upheld ................................... 16

    D.   There Is No Authority To Grant Petitioner's

        Request for Placement in a Halfway House or

        on Home Confinement ............................. 18

VI.  CONCLUSION ............................................... 20

# TABLE OF AUTHORITIES

**Cases**

Barnett v. Centoni, 31 F.3d 813 (9th Cir. 1994) ..............19

Baxter v. Palmigiano, 425 U.S. 308 (1976) ...................13

Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989) ............11

Cato v. Rushen, 824 F.2d 703 (9th Cir.1987) .................10

Fernandez v. Johnston, 833 F.2d 1316 (9th Cir. 1987) .........19

Grayson v. Rison, 945 F.2d 1064 (9th Cir. 1991) .............18

Grossman v. Bruce, 447 F.3d 801 (10th Cir.2006) .............14

Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992)............10

Hernandez v. Estelle, 788 F.2d 1154 (5th Cir.1986) ..........11

Hoptowit v. Ray, 682 F.2d 1237 (9th Cir. 1982) ..............19

Howard v. United States Bureau of Prisons, 487 F.3d 808

  (10th Cir.2007) ...........................................14

Jancsek v. Oregon Bd. Of Parole, 833 F.2d 1389

  (9th Cir. 1987) .......................................10, 16

Johnson v. Moore, 948 F.2d 517 (9th Cir.1991) ...............18

Lira v. Director of Corrections for State of California,

  2003 WL 22939242, *4 (N.D.Cal.2003) .......................14

Meachum v. Fano, 427 U.S. 215 (1976) ........................18

Mickens-Thomas v. Vaughn, 355 F.3d 294 (3d Cir. 2004) ........16

Montanye v. Haymes, 427 U.S. 236 (1976) .....................19

Moody v. Daggett, 429 U.S. 78 (1976) ........................19

Myers v. Klevenhagen, 97 F.3d 91 (5th Cir.1996) .............11

Myron v. Terhune, 476 F.3d 716 (9th Cir. 2007) ..............19

Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997) ...............19

Olim v. Wakinekona, 461 U.S. 238 (1983) .....................18

Pannell v. McBride, 306 F.3d 499 (7th Cir.2002) .............13

Piggie v. Cotton, 342 F.3d 660 (7th Cir.2003) ................14

Ponte v. Real, 471 U.S. 491 (1985) ...........................13

Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003). .............19

Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008) ............19

Superintendent v. Hill, 472 U.S. 445 (1985). ..............9, 10

Toolasprashad v Grondolsky, 570 F.Supp.2d 610 (D.N.J.2008) ...16

Tousaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986) .......9, 16

United States v. Brown, 59 F.3d 102 (9th Cir. 1995) ..........19

Wilkinson v. Dotson, 544 U.S. 74 (2005) .....................16

Wolff v. McDonald, 418 U.S. 539 (1974) ...................9, 13

**Statutes**

18 U.S.C. § 3621(b) .........................................18

18 U.S.C. § 4081 ............................................19

28 U.S.C. § 2241 ............................................ 1

**Regulations**

28 C.F.R. § 541.10(a) ...................................15, 18

28 C.F.R. § 541.10-.23 ....................................... 2

28 C.F.R. § 541.13, Table 3 .............................15, 18

28 C.F.R. § 541.17 ........................................... 3

28 C.F.R. § 542.14(a) ....................................... 4

28 C.F.R. § 542.14(d)(2) .................................... 4

28 C.F.R. § 542.15(a) ....................................... 4

28 C.F.R. § 542.18 ......................................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

On August 6, 2010, Federal Bureau of Prisons ("BOP") inmate Stephen Yagman ("Petitioner"), register number 43263-112, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition").  Petitioner challenges the July 28, 2010, determination that he committed the prohibited act of use of any narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by the medical staff. Specifically, Petitioner asserts that his rights were violated when he was charged with use of drugs and ultimately sanctioned with the loss of forty (40) days of Good Conduct Time. Petition, p. 20-21, 58-59.[1]  Petitioner outlines numerous purported due process violations; including failure to serve the incident report on him within the required time and the refusal to permit him to examine and cross examine witnesses. Petitioner also challenges the interpretation of the policy that led to his discipline.  Petition, p. 20.

Petitioner seeks an order requiring the BOP to expunge the incident report, restore the sanctioned forty (40) days of good conduct time, and either return him to the Residential Re-entry Center ("RRC") where he was last confined or place him on home confinement.  Petition, p. 59.

Pursuant to the Court's Order of October 4, 2010, Respondent Erwin Meinberg, Acting Warden of the Metropolitan

---

[1]  As Petitioner did not number the pages of the petition in a consistent manner, these page references are to the numbers printed on the top of each page of the petition by the electronic filing system.

Yagman v. Meinberg                          Answer to Petition for
Case No. 10-5860-SVW-CWx                     Writ of Habeas Corpus
                         1

1  Detention Center in Los Angeles, California, ("MDCLA") now
2  submits this Answer to the Petition.  For the reasons explained
3  below, the Petition should be denied.

4                           **II. FACTS**

5  **A.    Background**

6       Petitioner is serving a 36-month term of imprisonment as
7  the result of his conviction in <u>United States v. Stephen Yagman</u>,
8  Central District of California case number 06-CR-227-SVW.
9  Declaration of Sarah Schuh ("Schuh Decl.") ¶ 4(A).  Petitioner's
10 current projected release date is December 11, 2010.  Schuh
11 Decl. ¶ 4(B).

12 **B.    Inmate Disciplinary Process**

13      The BOP has implemented policy and procedures for inmate
14 discipline to promote a safe and orderly institution
15 environment.  The disciplinary process for inmates housed in an
16 RRC is administered by the RRC's employees utilizing a Center
17 Discipline Committee ("CDC").  Program Statement ("PS") 7300.09,
18 <u>Community Corrections Manual</u>, Chap. 5.7 (1/12/98)[2].  By policy,
19 however, the CDC is required to "comply with the Bureau of
20 Prisons prescribed policy and procedures for inmate discipline."
21 <u>Id.</u> ¶ 5.7.1; PS 5270.08, <u>Inmate Discipline and Special Housing</u>
22 <u>Units</u> (12/4/2009); 28 C.F.R. § 541.10-.23.  Moreover, although
23 the CDC can make recommendations, only the BOP's Disciplinary
24 Hearing Officer ("DHO") has authority to impose disciplinary
25 sanctions.  <u>Id.</u> ¶ 5.7.3.

26

27
_____

28 [2]  BOP policy is available on the BOP's website via the
   Policy/Forms link.

<u>Yagman v. Meinberg</u>                      Answer to Petition for
Case No. 10-5860-SVW-CWx                  Writ of Habeas Corpus
                          2

1    BOP policy provides that "[s]taff shall give each inmate
2  charged with violating a Bureau rule a written copy of the
3  charge(s) against the inmate, ordinarily within 24 hours of the
4  time staff became aware of the inmate's involvement in the
5  incident."  PS 5270.08, Chap.6, p. 1.  However, time limits may
6  be extended for good cause shown.  Id. p. 5.  Further, an inmate
7  shall receive advance written notice of the charges against him
8  no less than 24 hours before the inmate's appearance before the
9  DHO.  PS 5270.08, Chap. 7, p. 2; 28 C.F.R. § 541.17.

10    At the DHO hearing, an inmate is entitled to make a
11  statement and to present documentary evidence in the inmate's
12  own behalf.  PS 5270.08, Chap. 7, p. 3; 28 C.F.R. § 541.17 ("The
13  DHO shall call those witnesses who have information directly
14  relevant to the charge(s) and who are reasonably available. . .
15  the DHO shall request submission of written statements from
16  unavailable witnesses who have information directly relevant to
17  the charge(s). . . The DHO shall document reasons for declining
18  to call requested witnesses in the DHO report.").

19    The DHO must consider all evidence presented at the hearing
20  and base the decision on at least "some facts", and if there is
21  conflicting evidence, it must be based on "the greater weight of
22  the evidence."  PS 5270.08, Chap. 7, p. 6.  The DHO prepares a
23  written record of the proceedings which includes the advisement
24  of inmate rights, the DHO's findings, the DHO's decision, and
25  the specific evidence relied on by the DHO, and the reasons for
26  the sanctions.  The DHO shall ordinarily give the inmate a
27  written copy of the decision and disposition within 10 days of
28  the DHO decision.  PS 5270.08, Chap. 7, p. 9.

1   Inmates who are found to have committed a disciplinary
2   infraction are entitled to appeal the findings and sanctions via
3   the BOP's Administrative Remedy procedures. PS 7300.09 ¶ 5.7.6.
4   More specifically, once the DHO imposes sanctions, an inmate may
5   either utilize a standard appeal form known as a "BP-10" or send
6   a letter setting for the basis for the appeal to the Regional
7   Director of the Region in which the inmate is then confined.
8   Id.; 28 C.F.R. § 542.14(d)(2). The initial appeal must be
9   submitted within twenty (20) calendar days of the date on which
10  the sanctions are imposed. 28 C.F.R. § 542.14(a). If the
11  inmate is not satisfied with the Regional Director's response,
12  the inmate may appeal to the BOP's Office of General Counsel
13  within 30 days after the Regional Director signs the response.
14  28 C.F.R. § 542.15(a). "Appeal to the General Counsel is the
15  final administrative appeal." Id. Inmates are not considered
16  to have exhausted their administrative remedies until the Office
17  of General Counsel replies to the inmate's appeal. If the
18  inmate does not receive a response at any level within the time
19  allotted for a reply, "the inmate may consider the absence of a
20  response to be a denial at that level." 28 C.F.R. § 542.18.
21  **C.   Incident Leading to Discipline**
22      On May 13, 2010, Petitioner transferred to a Residential
23  Re-entry Center ("RRC") in Los Angeles, California. Schuh Decl.
24  ¶ 5(A). On June 22, 2010, RRC staff collected a urine specimen
25  from Petitioner and submitted it to a laboratory for a drug
26  test.[3] Declaration of Randy J. McWilliams ("McWilliams Decl.") ¶
27
28  [3] All BOP inmates undergo random drug testing. 28 C.F.R. §§ 550.30, et seq.

Yagman v. Meinberg                          Answer to Petition for
Case No. 10-5860-SVW-CWx                     Writ of Habeas Corpus

4

5. On June 29, 2010, RRC staff received a report from the testing laboratory showing that Petitioner's urine sample tested positive for Barbiturates, confirmed as Phenobarbital. McWilliams Decl. ¶ 6. As a result, RRC staff wrote an incident report at 2:26 p.m. charging Petitioner with violating Prohibited Act Code 112, use of any narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by the medical staff. McWilliams Decl. ¶ 6. The incident report noted:

> The lab results indicated a positive test result for (Barbiturates confirmed Phenobarbital) for specimen # 733081. A Review of the Chain of Custody record for Specimen #733081 indicated that inmate Yagman, Stephen Reg. #45263-112 submitted the [urinalysis] specimen on 6/22/10 at 8:10 p.m. to Monitor Staff John Rutherford . . . A review of the medication log indicates inmate Yagman was not approved for any medication that would produce a positive for the substances.

McWilliams Decl. ¶ 4, Ex. A.

On July 2, 2010, at 11:24 a.m., RRC staff member Katherine Turner served the Incident Report on Petitioner. McWilliams Decl. ¶ 7. Petitioner was then transferred to the Metropolitan Detention Center in Los Angeles, California ("MDCLA"). Schuh Decl. ¶ 5(B).

**D.   Center Discipline Committee Hearing**

The day before the CDC Hearing, staff delivered to Petitioner forms titled "Notice of Center Discipline Committee Hearing" and "Inmate Rights at Center Discipline Committee

1 Hearing". McWilliams Decl. ¶¶ 8-9. Mr. Yagman filled in a
2 portion of the "Notice of Center Discipline Committee Hearing"
3 form declining a staff representative but requesting two staff
4 witnesses. Id. ¶ 8. Petitioner wrote the following:

5     Katherine Turner didn't serve incident report . . .
6     John Uyeda never advised me I could not take
7     prescription medication or gave me written rules that
8     said that . . . Evidence – prescription for medication
9     – shows legally prescribed . . . I was not served with
10     the incident report until 07/07/10 at 11:45 a.m. and
11     specifically was not served on '7-2-10' at 11:24 a.m.
12     as indicated on it.

13     On July 8, 2010, at 4:00 p.m., the CDC held a hearing
14 regarding the charged violation. McWilliams Decl. ¶ 10.
15 Petitioner again waived staff representation. Id. ¶ 10(B).
16 Petitioner was advised of his rights at the hearing. Id. ¶
17 10(C). Petitioner admitted to the charges and made a statement
18 that he unwittingly took a medication (Donnatal) that contained
19 barbiturate, for intestinal spasms. Id. ¶ 10(C). Neither of
20 the two witnesses whom Petitioner sought to testify were
21 present. Id. ¶ 10(D). John Uyeda was not called because he was
22 no longer an RRC employee. Id. Katherine Turner was not called
23 because it would jeopardize safety at the RRC. Id. In lieu of
24 testifying, Ms. Turner provided a written statement, dated July
25 9, 2010, asserting that she served Petitioner with the incident
26 report on July 2, 2010. Id. ¶ 10(D).

27     The CDC also accepted and considered a number of documents
28 provided by the Petitioner regarding this medication. Id. ¶

10(E).  However, after giving due consideration to all of this
evidence, the CDC found that the Petitioner had committed the
act as charged.  Id. ¶ 11.  In makings its decision, the CDC
determined that the Incident Report was delivered to Petitioner
on July 2, 2010, more than 24 hours after June 29, 2010, the
date that RRC staff received the positive test results.
However, the CDC also noted that the BOP granted a waiver of
this requirement.  Id. ¶ 10(A).  Also, the CDC determined that
the delivery of the Incident Report did not prevent him from
presenting a defense at the hearing that took place on July 6,
2010.  Id.

     The CDC also considered the account of the reporting staff,
as written on the Incident Report.  Id. ¶ 10(B).  The CDC gave
more weight to the reporting staff member's statement, the
positive laboratory report, the RRC medication policy signed by
Petitioner on May 13, 2010 during intake, Petitioner's admission
to taking Donnatal on June 21 or June 22, 2010, and the fact
that Petitioner never submitted the prescription for Donnatal to
RRC staff for approval before ingesting it.  Id.

     The CDC considered but gave less weight to the Petitioner's
statements and the documentation he submitted.  Id. ¶ 10(C).
The CDC considered Petitioner's statements that RRC staff never
advised him he could not take prescription medication, and never
gave him written rules, and considered the Donnatal prescription
dated April 10, 2006, provided by Petitioner.  Id.

     The CDC recommended that the Petitioner be sanctioned by
being returned to "close custody" and that he lose 75% of good

Yagman v. Meinberg                          Answer to Petition for
Case No. 10-5860-SVW-CWx                     Writ of Habeas Corpus

                               7

1  conduct time, in order to discourage this type of behavior in
2  the future.  Id. ¶ 12.

3      On July 28, 2010, a DHO employed by the BOP reviewed the
4  disciplinary report and the evidence supporting it.  The DHO
5  determined that Petitioner was afforded all of his due process
6  rights, procedural and factual, adopted the CDC's
7  recommendations and sanctioned Petitioner with the loss of 40
8  days of good conduct time and recommended a transfer to a secure
9  facility for better control.  Id. ¶¶ 13-14.  Petitioner was
10  advised of the determination in a letter dated August 2, 2010
11  and was also specifically advised that he could appeal the
12  disciplinary findings and sanctions by letter or via the BOP's
13  administrative remedy process.  McWilliams Decl. ¶ 4.

14  **E.    The Administrative Remedy Process**

15      On August 4, 2010, Petitioner sent a letter appealing the
16  disciplinary findings and sanctions to the Regional Director of
17  the BOP's Western Region.  Schuh Decl. ¶ 8(A).  The Western
18  Regional Director issued a response denying the appeal on August
19  20, 2010.  Id.  On October 4, 2010, the Court excused Petitioner
20  from having to file any further administrative appeals.

21  **III. ARGUMENT**

22      Petitioner asserts that he is entitled to relief because
23  his due process rights were violated in the course of the
24  disciplinary process and because his conduct did not violate any
25  disciplinary rules.  As Petitioner is wrong with respect to both
26  arguments, he is not entitled to relief.

27
28

Yagman v. Meinberg                          Answer to Petition for
Case No. 10-5860-SVW-CWx                     Writ of Habeas Corpus
                          8

**A.   Due Process Standards in Prison Disiplinary Proceedings**

It is well settled that "[p]rison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due to a defendant in such proceedings ***does not apply.***" Wolff v. McDonald, 418 U.S. 539, 556 (1974)(emphasis added).  In Wolff, the Supreme Court set out the minimum procedural protections that the Due Process Clause requires during a disciplinary hearing in a prison setting:

1.   Written notices of the charges no less than 24 hours before the appearance before the inmate's disciplinary hearing;

2.   an impartial hearing body;

3.   a written statement as to the evidence relied on and the reasons for the disciplinary action;

4.   the prisoner should be allowed to call witnesses and present documentary evidence in his defense, "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."

Id. at 563-66, 571.

In addition, the Supreme Court has held that due process requires "some evidence" of guilt to support the disciplinary finding. Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). Reviewing courts cannot set aside decisions of prison officials if there is "some evidence that supports the decision ..." Tousaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986)(citing Wolff, 418 U.S. at 562-63, 567-69).  "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses,

1   or the weighing of evidence." Hill, 472 U.S. at 455. All that
2   is required to ensure fundamental fairness guaranteed by the Due
3   Process Clause is that the evidence must have some "indicia of
4   reliability" and that the findings cannot be without a modicum
5   of evidentiary support or otherwise arbitrary. See id.; see also
6   Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th
7   Cir.1987) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th
8   Cir.1987)). "Revocation of good time credits is not comparable
9   to a criminal conviction (citation) and neither the amount of
10  evidence necessary to support such a conviction (citation) nor
11  any other standard greater than some evidence applies in this
12  context." Hill, 472 U.S. at 456 (citations omitted).

13      Finally, the Court's review of a disciplinary decision is
14  narrow and limited to the evidence in the DHO record. See Id.
15  at 455-56; see also Hamilton v. O'Leary, 976 F.2d 341, 346 (7th
16  Cir. 1992).

17  **B.    Petitioner's Due Process Rights Weren't Violated**

18      Petitioner does not contend that he was deprived of an
19  impartial hearing officer or that he was not given a written
20  statement as to the evidence relied on and the reasons for the
21  disciplinary action.  McWilliams Decl. ¶¶ 7, 10 and 13.
22  Similarly, Petitioner was able to submit documents to the CDC in
23  support of his defense. Id. ¶ 10(C), Ex. B, pgs. 12-27.

24      Instead, Petitioner asserts that he was not given notice of
25  the charges on July 2, 2010. Petition, p. 20, item 1; p. 56, ¶
26  13D.  He also claims that he was denied the right to call two
27  staff witnesses: Katherine Turner and John Uyeda.  Petition, p.
28

1 | 20, item 2; p. 56, ¶ 13D and 13E.[4]  He also asserts that he was
2 | denied the right to cross-examine the persons who tested his
3 | urine sample.  Petition, p. 20, item 4.

4 | Finally, he argues that the written policy and verbal
5 | statements made to him by RRC staff permitted him to take
6 | Donnatol. Id., items 3, 5, 6 and 7. Put differently, he argues
7 | that the evidence presented at the hearing was insufficient to
8 | sustain the DHO's finding of that he committed a disciplinary
9 | violation.  As these assertions are meritless, the petition must
10 | be denied.

11 | **1.   Petitioner was served with Written Notice of the**
12 | **Charges More than 24 Hours before the Disciplinary**
     | **Hearing**

13 | Petitioner raised the issue of service of the written
14 | notice of the charges with the CDC, as part of his
15 | administrative appeal and again before this court.  On July 7,
16 | 2010, he wrote on the "Notice of Center Discipline Committee
17 | Hearing" form:

18 | Katherine Turner didn't serve incident report . . . I
19 | was not served with the incident report until 07/07/10

20 |
21 |

---

22 | [4]    Petitioner also asserts that he was not served with a copy
     | of the written incident report within 24 hours of its having
23 | been written and that the disciplinary hearing was held more
     | than three working days after the BOP learned of the incident.
24 | Petition, p. 56, ¶ 13A and 16.  However, violations of BOP
     | administrative procedural rules do not, in and of themselves,
25 | constitute actionable due process violations. See Bostic v.
     | Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989). Myers v.
26 | Klevenhagen, 97 F.3d 91, 94 (5th Cir.1996); see also Hernandez
27 | v. Estelle, 788 F.2d 1154, 1158 (5th Cir.1986) (mere failure of
     | prison officials to comply with their own regulation is not a
28 | constitutional violation).

Yagman v. Meinberg                          Answer to Petition for
Case No. 10-5860-SVW-CWx                     Writ of Habeas Corpus
11

1      at 11:45 a.m. and specifically was <u>not</u> served on '7-2-

2      10' at 11:24 a.m. as indicated on it.

3  McWilliams Decl. ¶ 8 and p.13.

4     The CDC was thus well aware of the petitioner's contention

5  in this regard and even obtained a memorandum from Katherine

6  Turner affirming that she served the Incident Report on the

7  petitioner on July 2, 2010.  McWilliams Decl., p. 19.

8     Given this evidence, the Court must uphold the DHO's

9  factual determination that the petitioner was served with the

10  incident report on July 2, 2010, under the deferential standard

11  of review mandated by the Supreme Court.  <u>Hill</u>, <u>supra</u>, 472 U.S.

12  at 455 (Ascertaining whether there is "some evidence" supporting

13  the decisions "does not require examination of the entire

14  record, independent assessment of the credibility of witnesses,

15  or the weighing of evidence.")

16     Moreover, even if the Court were to disregard this

17  evidence, the record shows definitively that Petitioner is still

18  not entitled to relief.  The evidence before the CDC and DHO

19  shows that Petitioner asserted that he received a copy of the

20  Incident Report on July 7, 2010, at 11:45 a.m.  McWilliams

21  Decl., ¶ 8 and p. 13.  The disciplinary hearing was held on July

22  8, 2010, at 4:00 p.m., more than 24 hours later.  McWilliams

23  Decl. ¶¶ 7, 10 and p. 15.  Thus, petitioner received written

24  notice of the charges at more than 24 hours before the

25  disciplinary hearing.

26     **2.  Petitioner Right to Call Witnesses was not Violated**

27     The right to call witnesses at a disciplinary hearing is

28  not absolute.  Prison officials are permitted to keep the

Yagman v. Meinberg               Answer to Petition for
Case No. 10-5860-SVW-CWx         Writ of Habeas Corpus

1  disciplinary hearing within reasonable limits and may refuse to
2  call witnesses when their testimony would be irrelevant,
3  unnecessary, or hazardous.  Wolff, supra, 418 U.S. at 566; see
4  also Pannell v. McBride, 306 F.3d 499, 503 (7th Cir.2002)
5  ("[P]risoners do not have the right to call witnesses whose
6  testimony would be irrelevant, repetitive, or unnecessary.")
7  Given these limitations, the Supreme Court has observed that a
8  constitutional challenge to a prison official's refusal to allow
9  an inmate to call witnesses may "rarely, if ever, be
10 successful." Ponte v. Real, 471 U.S. 491, 499 (1985).

11      Importantly, although inmates have a limited right to call
12 witnesses to provide evidence on their behalf, they have no
13 right whatsoever to confront or cross-examine witnesses against
14 them at disciplinary hearings.  See Baxter v. Palmigiano, 425
15 U.S. 308, 322-23 (1976).

16      Here, at the time of the hearing, Petitioner identified two
17 witnesses that he wished to call: Katherine Turner and John
18 Uyeda.  Petitioner sought to call Katherine Turner solely to
19 challenge her assertion that she had served him with the written
20 incident report on July 2, 2010.  Petition, p. 20, item 2; p.
21 21, 1st and 4th paragraphs; p. 56, ¶ 13 D.  Petitioner now
22 complains that he was similarly unable to confront and cross-
23 examine the individual who tested his urine sample.  Petition,
24 p. 20, item 4.  However, as Petitioner had no right to confront
25 or cross-examine either of these witnesses, his due process
26 rights were not violated when they were not called to testify at
27 the disciplinary hearing.

28

Yagman v. Meinberg                      Answer to Petition for
Case No. 10-5860-SVW-CWx                 Writ of Habeas Corpus
                          13

1   Petitioner also sought to call John Uyeda.  As he explained
2   on the Notice of Center Disciplinary Committee Hearing form,
3   Petitioner sought to elicit testimony that "John Uyeda never
4   advised me I could not take prescription medication or gave me
5   written rules that said that."   McWilliams Decl., ¶ 8 and p.
6   13.  The CDC explained that he could not call Mr. Uyeda to
7   testify, however, because he no longer worked for the RRC.  Id.
8   ¶ 10(D).  As Mr. Uyeda was not available to testify at the
9   hearing, there is no basis for finding that Petitioner's due
10  process rights were violated when the CDC was unable to call him
11  to testify at the disciplinary hearing.

12      Moreover, even if the failure to procure Mr. Uyeda's
13  testimony could be considered error, the error was harmless
14  because his testimony was irrelevant to the matter at issue.
15  See Howard v. United States Bureau of Prisons, 487 F.3d 808, 813
16  (10th Cir.2007) quoting Grossman v. Bruce, 447 F.3d 801, 805
17  (10th Cir.2006)("`Errors made by prison officials in denying
18  witness testimony at official hearings are subject to harmless
19  error review'".); Piggie v. Cotton, 342 F.3d 660, 666 (7th
20  Cir.2003) (same); Lira v. Director of Corrections for State of
21  California, 2003 WL 22939242, *4 (N.D.Cal.2003) (finding that
22  failure to call the inmate's witnesses was harmless, because
23  their testimony was irrelevant-"[t]he issue at the disciplinary
24  hearing was whether [the prisoner] disobeyed an order, not why
25  he disobeyed an order").

26      Here, Petitioner was charged with violating Federal Bureau
27  of Prisons Prohibited Act Code 112, which is defined as "Use of
28  any narcotics, marijuana, drugs, or related paraphernalia not

Yagman v. Meinberg                    Answer to Petition for
Case No. 10-5860-SVW-CWx              Writ of Habeas Corpus
                        14

1  prescribed for the individual by the medical staff."  28 C.F.R.
2  § 541.13, Table 3; McWilliams Decl., pgs. 12 and 15.  As he was,
3  and still is, serving a federal sentence, Petitioner was subject
4  to the disciplinary rules applicable to all persons in the
5  custody of the Federal Bureau of Prisons.  28 C.F.R. § 541.10(a)
6  ("The provisions of this rule apply to all persons committed to
7  the care, custody, and control (direct or constructive) of the
8  Bureau of Prisons.)

9      Petitioner explained that he wanted to call Mr. Uyeda who
10 could testify that he "never advised me I could not take
11 prescription medication or gave me written rules that said
12 that."  Petitioner also expected Mr. Uyeda to testify that "he
13 was shown S.Y. list of medications (27) and approved them to be
14 taken."  Petition, p. 21, 4th paragraph.  Such testimony,
15 however, would entirely irrelevant to the charged violation.

16     Petitioner was charged with taking a drug that had not been
17 prescribed to him by BOP Medical Staff, an act that Petitioner
18 admittedly committed.  See, Petition p. 20, item 7.  Petitioner
19 doesn't assert that Mr. Uyeda was a member of the BOP's "medical
20 staff."  Similarly, he does not argue that the positive drug
21 test was caused by a medication that was prescribed to him by
22 BOP medical staff.  As such, the testimony that Petitioner
23 sought to elicit from Mr. Uyeda was irrelevant to the question
24 of whether he committed the charged violation.  For this reason,
25 even if it was error not to elicit testimony from Mr. Uyeda
26 despite the fact that he no longer worked for the RRC, such
27 error was harmless.

28

1  **C.    The Disciplinary Hearing Officer's Decision Must be Upheld**

2      It is clear that Petitioner simply disagrees with the CDC

3  and DHO's factual determination that his conduct constituted a

4  violation of prison disciplinary rules.  However, it is well

5  settled given the deferential standard that the court must use

6  in reviewing that decision, it is clear that the disciplinary

7  determination must be upheld.[5]

8      Reviewing courts do not set aside decisions of prison

9  officials if there is "some evidence that supports the decision

10 ..."    Toussaint v. McCarthy, supra, 801 F.2d at 1105.

11 "Ascertaining whether this standard is satisfied does not

12 require examination of the entire record, independent assessment

13 of the credibility of witnesses, or the weighing of evidence."

14 Hill v. Superintendent, supra, 472 U.S. at 447.  All that is

15 required for review of these decisions is that the evidence must

16 have some indication of reliability, and that findings cannot be

17 without some evidentiary support or otherwise arbitrary.  Id. at

18 455; Jancsek v. Oregon Bd. Of Parole, supra, 833 F.2d at 1390.

19

20 ─────────────

21         [5]    Even when a court determines that an inmate's due
   process rights were violated in a disciplinary proceeding, the
22 court does not conduct its own "trial" to cure the defect.
   Instead, the proper remedy in such a case is to order a curative
23 administrative hearing conducted in accordance with due process
   requirements.  See, e.g., Mickens-Thomas v. Vaughn, 355 F.3d 294
24 (3d Cir. 2004); Toolasprashad v . Grondolsky, 570 F.Supp.2d 610,
   631 (D.N.J.2008) ("The only remedy the court can give is to
25 order the [administrative body] to correct the abuses or
   wrongful conduct within a fixed period of time"); cf. Wilkinson
26 v. Dotson, 544 U.S. 74 (2005) (pointing out that a procedurally
27 proper curative administrative proceeding might yield a
   substantive determination identical to that reached as a result
28 of a procedurally defective administrative proceeding).

Yagman v. Meinberg                    Answer to Petition for
Case No. 10-5860-SVW-CWx              Writ of Habeas Corpus
                        16

1     Under this extremely deferential standard, the DHO's
2   decision must be upheld.  Although Petitioner disputes that his
3   actions constituted the prohibited act of "use of any . . .
4   drugs . . . not prescribed for the individual by the medical
5   staff", the DHO weighed all of the evidence presented and
6   concluded otherwise.  McWilliams Decl. ¶¶ 10-13.

7     The chain of custody form and the laboratory report clearly
8   shows that the urine specimen that the petitioner provided on
9   June 22, 2010, tested positive for barbiturates.  McWilliams
10  Decl. ¶¶ 5 and 10(B).  The RRC staff member who wrote the
11  incident report reviewed the RRC's medication log and found that
12  "inmate Yagman was not approved for any medication that would
13  produce a positive for the substances."  Id. ¶ 6.

14     Furthermore, Petitioner admitted to the CDC that he took
15  Donnatal on June 21 or June 22, 2010.  Id. ¶¶ 10(C) and 11(B).
16  Indeed, the CDC and DHO fully considered Petitioner's statements
17  and supporting documents.  The CDC considered Petitioner's
18  statements that RRC staff never advised him he could not take
19  Donnatal and never gave him written rules.  The CDC also
20  reviewed the Donnatal prescription dated April 10, 2006 that the
21  petitioner submitted.  Id. ¶ 10(C).

22     After considering all of this evidence the DHO reasonably
23  concluded that petitioner had ingested a drug that he was not
24  then authorized to take by BOP medical staff and, as a result,
25  found that he was guilty of violating disciplinary code 112.  28
26  C.F.R. § 541.13, Table 3.  This finding was clearly supported by
27  "some evidence", including the drug test itself and the
28  petitioner's admissions.

1    Moreover, Petitioner's arguments to the contrary are
2    unavailing.  Petitioner has argued strenuously that none of the
3    rules provided to him when he arrived at the RRC prohibited him
4    from ingesting this medication.  Petition, p.20, items 3, 5 and
5    6.  Petitioner was not charged with violation the RRC's local
6    rules.  Rather, he was charged with committing an act prohibited
7    by the Code of Federal Regulations and applicable to all persons
8    in the custody of the BOP.  28 C.F.R. §§ 541.10(a) and 541.13,
9    Table 3.  As such, his repeated reference to the local RRC rules
10   regarding the residents' use and storage of medications is
11   entirely irrelevant to the matter at issue.

12   **D.   There Is No Authority To Grant Petitioner's Request for**
     **Placement in a Halfway House or on Home Confinement**

13       Petitioner requests that the Court order the BOP to
14   immediately place him in a halfway house or home confinement.
15   However, the BOP has exclusive statutory authority to determine
16   petitioner's place of imprisonment under 18 U.S.C. § 3621(b).
17   Johnson v. Moore, 948 F.2d 517 (9th Cir.1991); Grayson v. Rison,
18   945 F.2d 1064, 1067 (9th Cir. 1991) ("[w]hen prison officials
19   have legitimate administrative authority ... to move inmates
20   from prison to prison ... the Due Process Clause imposes few
21   restrictions on the use of that authority, regardless of any
22   additional motives which are claimed to exist").

23       It is well-settled that an inmate has no liberty interest
24   in determining his place of imprisonment.  Meachum v. Fano, 427
25   U.S. 215, 224-25 (1976)(due process not implicated by decision
26   to place inmate at a particular prison); Olim v. Wakinekona, 461
27   U.S. 238, 245 n.6 (1983); Montanye v. Haymes, 427 U.S. 236
28

1  (1976); United States v. Brown, 59 F.3d 102, 105 (9th Cir. 1995)

2  (holding that the Double Jeopardy Clause does not apply to a

3  prison's administrative determination that disruptive conduct

4  requires transfer to a higher security facility).

5      Similarly, Petitioner has no statutory or constitutional

6  right to a particular classification status.  Fernandez v.

7  Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987); see also Neal v.

8  Shimoda, 131 F.3d 818, 828 (9th Cir. 1997).  The BOP has broad

9  discretion in determining petitioner's security classification

10  under 18 U.S.C. § 4081.  Moody v. Daggett, 429 U.S. 78, 87 n. 9,

11  97 S.Ct. 274 (1976)(interpreting § 4081 as expressing Congress'

12  desire to "give federal prison officials full discretion to

13  control these conditions of confinement.")(emphasis added);

14  Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994) (broad

15  discretion is enjoyed by prison officials in making

16  classification determinations); Myron v. Terhune, 476 F.3d 716,

17  719 (9th Cir. 2007)("mere act of classification 'does not amount

18  to an infliction of pain,' [and] 'is not condemned by the Eighth

19  Amendment.'")(quoting Hoptowit v. Ray, 682 F.2d 1237, 1251 (9th

20  Cir. 1982)).

21      The transfer of an inmate to an RRC does not constitute a

22  release from imprisonment and thus does not implicate the fact

23  or duration of confinement.  Ramirez v. Galaza, 334 F.3d 850,

24  859 (9th Cir. 2003).  Rather, the Ninth Circuit has made clear

25  that for purposes of designation for service of sentence, an RRC

26  (previously known as Community Confinement Centers or CCC's),

27  constitutes a place of incarceration.  Rodriguez v. Smith, 541

28  F.3d 1180 (9th Cir. 2008).

Yagman v. Meinberg                      Answer to Petition for
Case No. 10-5860-SVW-CWx                Writ of Habeas Corpus

1    Given the BOP's broad discretion to determine the
2    Petitioner's place of incarceration and given that Petitioner
3    has no constitutional or other right to be housed in any
4    particular institution or receive any specific custody
5    classification, there is simply no basis for the Court to order
6    the BOP to make place the Petitioner either in a halfway house
7    or on home confinement.

8                              **VI. CONCLUSION**

9    For the foregoing reasons, Respondent respectfully requests
10   that this Court deny the instant petition for a writ of habeas
11   corpus.

12

13   DATED: October 7, 2010          Respectfully submitted,

14                                    ANDRÉ BIROTTE JR.
                                      United States Attorney
15                                    LEON W. WEIDMAN
                                      Assistant United States Attorney
16                                    Chief, Civil Division

17

18

19                                    _____

20                                    ELIEZER BEN-SHMUEL
                                      Special Assistant United States
21                                        Attorney
                                      Attorneys for Respondent
22                                    ERWIN MEINBERG

23

24

25

26

27

28

Yagman v. Meinberg                              Answer to Petition for
Case No. 10-5860-SVW-CWx                         Writ of Habeas Corpus

PROOF OF SERVICE

I am over the age of 18 and not a party to this action.  I am employed by the Federal Bureau of Prisons.  My business address is Consolidated Legal Center, Los Angeles, Metropolitan Detention Center, 535 North Alameda Street, Los Angeles, California 90012.

On October 7, 2010, I served the following documents:

RESPONDENT'S ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; DECLARATION OF RANDY MCWILLIAMS IN SUPPORT OF ANSWER TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; DECLARATION OF SARAH SCHUH IN SUPPORT OF ANSWER TO PETITIONER'S PETITION TO 28 U.S.C. § 2241

on the person named below by enclosing a copy in a sealed envelope with postage fully prepaid and addressed as shown below.  I deposited the envelope for mailing on this date with the United States Postal Service.

Date of mailing: October 7, 2010.

Place of mailing: Los Angeles, California.

Person to whom mailed:

Stephen Yagman
Register Number 43263-112
Metropolitan Detention Center, Los Angeles
P.O. Box 1500
Los Angeles, CA  90053

In addition, on October 7, 2010, I enclosed the documents listed above in a sealed envelope addressed to Stephen Yagman, Register Number 43263-112 and delivered the envelope to that

//

//

//

individual at Housing Unit 6 South of the Metropolitan Detention Center in Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 7, 2010 at Los Angeles, California.

Yolanda Morales