1  ANDRÉ BIROTTE JR.
United States Attorney
2  LEON W. WEIDMAN
Assistant United States Attorney
3  Chief, Civil Division
ELIEZER BEN-SHMUEL
4  Special Assistant United States Attorney
California Bar Number: 160789
5      Room 7516 Federal Building
       300 North Los Angeles Street
6      Los Angeles, California 90012
       Telephone:   (213) 485-0439, ext. 5428
7      Facsimile:   (213) 253-9505
       Email:   eliezer.ben-shmuel@usdoj.gov
8
Attorneys for Respondent
9  ERWIN MEINBERG

10

11              UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                  WESTERN DIVISION

14
STEPHEN YAGMAN,                ) Case No.: 10-5860-SVW-CWx
15                             )
            Petitioner,        ) DECLARATION OF RANDY MCWILLIAMS
16                             ) IN SUPPORT OF ANSWER TO
      vs.                      ) PETITIONER'S PETITION FOR WRIT
17                             ) OF HABEAS CORPUS PURSUANT TO 28
ERWIN MEINBERG, Acting Warden, ) U.S.C. § 2241
18                             )
            Defendant          )
19  _____)

20  I, Randy McWilliams, hereby declare:

21      1.   I am currently employed by the Federal Bureau of

22  Prisons ("BOP") as the Discipline Hearing Officer ("DHO") at the

23  Federal Detention Center in Seatac, Washington ("FDC Seatac").

24  I have been employed with the Federal Bureau of Prisons ("BOP")

25  since January, 1991.  I have served as a DHO at FDC Seatac since

26  June, 2001.  If called upon, I could and would competently

27  testify as set forth below.

28

1          2.   My responsibilities as DHO consist of conducting
2    administrative hearings for inmates alleged to have committed
3    rule violations established by BOP policy.  Also, I am charged
4    with reviewing Central Discipline Committee hearing reports from
5    Residential Re-entry Centers ("RRC") in the BOP's Western
6    Region.  I make my determinations based on established policy,
7    available evidence, inmate statements, witness statements, and
8    sound correctional judgment.  I have attended DHO training and
9    am certified in DHO policies and procedures.  I have access to
10   DHO Reports, Incident Reports, Inmate Disciplinary Records,
11   staff memoranda, evidence, and inmate statements to form the
12   basis of my decision.  I am an impartial hearing officer.
13         3.   I am making this declaration in support of the
14   government's Answer to the petition filed in <u>Stephen Yagman v.</u>
15   <u>Erwin Meinberg</u>, CV 10-5860-SVW-CWx.  The petition was filed by
16   inmate Stephen Yagman ("Petitioner"), register number 43263-112,
17   who challenges the disciplinary proceedings and factual basis
18   for my determination that Mr. Yagman violated Code 112, Use of
19   Narcotic Drugs.  As a result of my finding, I imposed sanctions
20   against Mr. Yagman, including the loss of forty (40) days good
21   conduct time credits and transfer to a more secure custody.  <u>See</u>
22   Petition, pgs. 20-23, 54-59.
23         4.   On July 28, 2010, in my capacity as a BOP DHO, I
24   reviewed the Center Discipline Committee ("CDC") Report and all
25   supporting documentation stemming from a urinalysis test taken
26   of Stephen Yagman, on June 22, 2010 at 8:10 p.m.  Mr. Yagman was
27   notified of the disciplinary action by the BOP's Community
28   Corrections Manager in a letter dated August 2, 2010, with

supporting documentation.  Attached as Exhibit A is a true and
correct copy of the cover letter dated August 2, 2010, that was
sent to Mr. Yagman pertaining to this disciplinary proceeding.
Attached as Exhibit B are true and correct copies of the
documents which were sent to Mr. Yagman along with that cover
letter.  The documents are:

        a)  Incident Report dated June 29, 2010

        b)  Notice of Center Discipline Committee Hearing
dated July 7, 2010;

        c)  Inmate Rights at Center Disciplinary Committee
Hearing dated July 7, 2010;

        d)  Center Disciplinary Committee Report of the
hearing held on July 8, 2010, including copies of the
evidence submitted to and considered by the Center
Discipline Committee.

5.    These documents show that on June 22, 2010, at 8:10
p.m. Stephen Yagman submitted a urine sample for drug testing to
staff at the Marvin Gardens Center, the residential re-entry
center ("RRC") to which Mr. Yagman was assigned.  Ex. B, p. 21.
The sample was assigned Specimen Number 733081.  Id.  On June
29, 2010, at approximately 9:35 a.m., RRC staff obtained a
report from Redwood Toxicology Laboratory which showed that the
urine sample assigned specimen number 733081 had tested positive
for Barbiturates and Phenobarbital.  Ex. B, p. 22.

6.    On June 29, 2010, the reporting RRC employee prepared
an incident report charging Mr. Yagman violation of discipline
Code 112, Use of any narcotics, marijuana, drugs, or related
paraphernalia not prescribed for the individual by the medical

staff).   Ex. B, p. 12, Incident Report; <u>see also</u>, 28 C.F.R. §
541.13, Table 3.   The Incident Report states:

> The lab results indicated a positive test result for
> (Barbiturates confirmed Phenobarbital) for specimen #
> 733081.   A Review of the Chain of Custody record for
> Speciman #733081 indicated that inmate Yagman, Stephen
> Reg. #45263-112 submitted the UA specimen on 6/22/10
> at 8:10 p.m. to Monitor Staff John Rutherford . . . A
> review of the medication log indicates inmate Yagman
> was not approved for any medication that would produce
> a positive for the substances.

Ex. B, p. 12, "11. Description of Incident."

7.   On July 2, 2010, RRC staff member Katherine Turner
delivered the incident report to Mr. Yagman while he was in the
custody of the United States Marshals Service.   Ex. B, p. 12 and
19.

8.   On July 7, 2010, RRC staff delivered a Notice of
Center Discipline Committee Hearing to Mr. Yagman.   Ex. B, p.
13.   Mr. Yagman declined the offer of a staff representative on
this form.   However, he did request two staff witnesses. Yagman
on the Notice of Center Discipline Committee Hearing form state
"Katherine Turner didn't serve incident report . . . John Uyeda
[can testify to] never advised me I could not take prescription
medication or gave me written rules that said that . . .
Evidence – prescription for medication – shows legally

prescribed." Mr. Yagman also wrote: "I was not served with the incident report until 07/07/10 at 11:45 a.m. and specifically was not served on '7-2-10' at 11:24 a.m." as indicated on it."

9. On July 7, 2010, RRC staff also delivered the Inmate Rights at Center Discipline Committee Hearing form to Mr. Yagman advising him of his right at the hearing. Ex. B, p. 14. Mr. Yagman refused to sign the acknowledgment of those rights. Id.

10. The Center Disciplinary Committee Hearing was held on July 8, 2010, at 4:00 p.m. Ex. B, p. 15, Center Discipline Committee Report ("CDC Report"). The report shows that:

> A. Mr. Yagman received advance written notice of the charges on July 2, 2010, and was advised of his rights before the CDC on July 7, 2010. Id., " I. Notice of Charges".
>
> B. Mr. Yagman waived his right to a staff representative. Id., "II. Staff Representative".
>
> C. Mr. Yagman was advised of his rights at the hearing. Id., "III. Presentation of Evidence, ¶ A." Mr. Yagman then admitted the charges. Id. He also "stated that he unwittingly took a medication (Donnatal) that contains a barbiturate, the medication was taken for intestinal spasms." Id., "III. Presentation of Evidence, ¶B".
>
> D. The two witnesses whom Mr. Yagman sought to testify were not called. John Uyeda was not

1                called because he was no longer employed by the

2                company that operated the RRC.  Katherine Turner

3                was not called because it would jeopardize safety

4                at the RRC.  Id., "III. Presentation of Evidence,

5                ¶C".  In lieu of testifying, Ms. Turner submitted

6                a written statement dated July 9, 2010, stating

7                that she served Mr. Yagman with the incident

8                report on July 2, 2010 at 11:24 a.m.  Id., p. 19.

9       E.   In addition to the Incident Report and

10              Investigation, the CDC also considered the

11              toxicology report, chain of custody form, the

12              intake form signed by Mr. Yagman, and medical

13              documents that Mr. Yagman submitted.  Id., p. 15,

14              "III. Presentation of Evidence, ¶ D".

15      11.  The CDC Chair found that the act was committed as

16 charged.  Ex. B, p. 18, "IV. Findings of the Committee".

17 Specific evidence relied upon to support finding included:

18       A.   The CDC Chair noted the Incident Report was not

19              delivered to Mr. Yagman within 24 hours of the

20              incident because he was a flight risk, but that a

21              waiver was granted.  Ex. B, p. 16, "V. Specific

22              Evidence" (referring to Ex. B, p. 19).  The CDC

23              found that the Incident Report was served on Mr.

24              Yagman on July 2, 2010, which the CDC determined

25              did not prevent him from presenting a defense.

26              Ex. B, p. 16, "V. Specific Evidence".

27       B.   The CDC Chair considered the account of the

28              reporting staff, as written on the Incident

1          Report.  _Id._  The CDC gave more weight to the
2          reporting staff member's statement, the positive
3          laboratory report, the RRC medication policy
4          signed by Mr. Yagman on May 13, 2010 during
5          intake, Mr. Yagman's admission to taking Donnatal
6          on 6/21 or 6/22/10, and the fact that Mr. Yagman
7          never submitted any prescription to staff for
8          approval.  Ex. B, p. 16-17, "V. Specific
9          Evidence".
10     C.   The CDC Chair also considered Mr. Yagman's
11          statements that RRC staff never advised him he
12          could not take prescription medication, never
13          gave him written rules, and Mr. Yagman took
14          Donnatal on 6/21/10 or 6/22/10.   The CDC Chair
15          also considered the Donnatal prescription dated
16          4/10/06, provided by Mr. Yagman.  Ex. B, p. 16-
17          17, "V. Specific Evidence".  The CDC Chair gave
18          less weight to the statements and prescription.
19          _Id._

20     12.  The CDC recommended that Mr. Yagman be sanctioned by
21 being returned to close custody and by losing 75% of Good
22 Conduct Time, noting the sanction would hopefully discourage
23 this type of behavior in the future.  Ex. B, p. 18, "VI.
24 Sanction Recommendation" and "VII. Reason For Sanction
25 Recommendation".   The CDC then referred the matter to a BOP DHO
26 for final review and determination.

27     13.  On July 28, 2010, I reviewed the Center Discipline
28 Committee ("CDC") Report and all supporting documentation

Yagman v. Meinberg                            Declaration of
Case No. 10-5860-SVW-CWx                    Randy McWilliams
                         - 7 -

1  stemming relating to this proposed disciplinary action against
2  Mr. Yagman stemming from the positive results of the urinalysis
3  test.   I reviewed the documentation both to ensure that Mr.
4  Yagman was afforded all of the due process rights to which he
5  was due and that the factual findings were supported by
6  sufficient evidence.   I concluded that Mr. Yagman had been
7  afforded his due process rights and that the CDC's factual
8  conclusions were correct. As a result, I sanctioned Mr. Yagman
9  with the loss of forty (40) days Good Conduct Time credits and
10 that he be transferred to a secure facility.  I then entered
11 this information into the BOP's SENTRY database.  Ex. B, p. 40.
12       13.   Attached hereto as Exhibit C is a true and correct
13 copy of Mr. Yagman's Inmate Discipline Data, Chronological
14 Disciplinary Record report generated on SENTRY, dated October 4,
15 2010.   This report shows that shows that Mr. Yagman was
16 sanctioned with the loss of forty (40) days Good Conduct Time
17 credits and transferred to a secure facility for better control
18 as sanctions for violating Code 112.
19       I declare under penalty of perjury pursuant to 28 U.S.C.
20 § 1746 that the foregoing is true and correct.
21       Executed October _6_, 2010, at Seatac, Washington.
22
23
24
25                              Randy J. McWilliams
26                              Disciplinary Hearing Officer
                                Federal Bureau of Prisons
27
28

Yagman v. Meinberg                              Declaration of
Case No. 10-5860-SVW-CWx                        Randy McWilliams
                          - 8 -

# Exhibit A

**U.S. Department of Justice**

**Federal Bureau of Prisons**

_____

*Long Beach Community Corrections Office*
*P.O. Box 323, San Pedro, CA 90733*

Date:      August 2, 2010

To:        YAGMAN, Stephen
           Register No:   43263-112

From:      Wes J. Mayhew
           Community Corrections Manager

Subject:   Incident Report(s) Dated: June 29, 2010
           Offense(s) Code: 112, Use of Drugs
                       #2046414

           Attached is your copy of the Center Discipline Committee Report pertaining
           to the above-referenced incident(s).

           If you disagree with the findings and/or action, you may file an
           administrative remedy appeal within twenty (20) calender days from the date the
           action was imposed to the Regional Director to file your complaint.

           However, if you are to be transferred to a federal institution, it is recommended
           that you wait and use the administrative remedy procedure upon arrival at the
           institution.

           The address of the Regional Director is:

           Regional Director, Western Regional Office
           Federal Bureau of Prisons
           7338 Shoreline Drive
           Stockton, CA 95219


           CC: CDC Binder
               Inmate

# Exhibit B

*Original copy*

BP-S205.073    **INCIDENT REPORT (CCC'S)**   **CDFRM**
MAR 94
**U.S. DEPARTMENT OF JUSTICE**

**FEDERAL BUREAU OF PRISONS**

## Part I - Incident

| 1. | Name of Center | | | |
|---|---|---|---|---|
| | Cornell Pre-Release Marvin Gardens RRC | | | |

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time of Incident |
|---|---|---|---|
| Yagman, Stephen | 43263-112 | 6/29/10 | 9:35 a.m. |

| 6. Place of Incident | 7. Assignment | 8. Quarters |
|---|---|---|
| Facility | Pre-Release | Rm. 6 4B |

| 9. Incident | 10. Code |
|---|---|
| Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | # 112 |

11.  Description of Incident  (DATE  6/29/10   and TIME  9:55am staff became aware of incident)

At 9:35 a.m. on 6/29/10, Job developer, Jeannifer Del Campo was pulling the Specimen disposition sheets from the Redwood Toxicology Laboratory website. The lab results indicated a positive test result for (Barbiturates confirmed Phenobarbital) for specimen # 733081. A Review of the Chain of Custody record for Specimen #733081 indicated that inmate Yagman, Stephen Reg. #43263-112 submitted the UA specimen on 6/22/10 at 8:10 p.m. to Monitor Staff John Rutherford.

A review of the medication log indicates inmate Yagman was not approved for any medication that would produce a positive for the substances.

Based on the above information, Yagman, Stephen Reg. # 43263-112 is being cited for violation of code # 112, Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff.

| 12. Signature of Reporting Employee | 13. Name and Title (Printed) | a. Date and Time |
|---|---|---|
| | J. Del Campo Job Developer | 6/29/10     2:26 p.m. |

| 14. Incident Report Delivered to Inmate by | 15. Date Delivered | 16. Time Delivered |
|---|---|---|
| *Katherine Quinn* | 7-2-10 | 11:24 A.m |

(Continued Below)  (incdnt1)

I have received a copy of this form: _____

                                Resident's Signature

BP-A207.073
MAR 1994

**NOTICE OF CENTER DISCIPLINE COMMITTEE HEARING (CCC'S)**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

Date: 7/7/10

Facility: Cornell-Marvin Gardens Facility 9411 S. Central Ave. Los Angeles, CA 90002

Inmate: Yagman, Stephen

Register Number: 43263-112

Alleged Violation(s): use of any narcotics, marijuana, drugs, or related paraphernalia not perscribed for the individual by the medical staff.

Date of Offense: 6/29/10

Code Number: 112

You are being referred to the Center Discipline Committee for the above charges(s).

The hearing will be held on: 7/7/10 , at 4pm

at the following location: Metropolitan Detention Center

as a witness

You are entitled to have a staff member represent you at the hearing. Please indicate below whether you desire to have a staff representative, and if so, his or her name.

John Uyeda, as a witness

Inmate's Initials: SY    ☐ I (do) wish to have a staff representative. witness

Inmate's Initials: SY    ☐ I (do not) wish to have a staff representative.

witness

If so, the staff representative's name is: John Uyeda as a witness, not as a representative

You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf, provided calling your witnesses will not jeopardize Center safety. Names of witnesses you wish to call should be listed below.

Inmate's Initials: also   Briefly state what each proposed witness would be able to testify to. Katherine Turner - didn't serve incident report

Name: John Uyeda , Can Testify to: never advised me

I could not take prescription medication, or gave me written rules

Name: that said that . , Can Testify to:

- Evidence - prescription for medication - shows legally prescribed

Name: PDR page , Can Testify to: - shows contents

I was not served with the incident report until 07/07/10 at 11:45 a.m. and specifically was not served on "7-2-10" at 11:24a.m.," as indicated on it

The Chairman of the Center Discipline Committee will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by him/her to be necessary for an appreciation of the circumstances surrounding the charge(s). Repetitive witnesses need not be called. Unavailable witnesses may be asked to submit written statements.

Date, sign, and return this form to the Chairman of the Center Discipline Committee.

Date    Inmate Signature/Reg. No.: Stephen Yagman

Notice of hearing given to inmate by (Employee's Signature)    Date: 7/7/10

BP-A0661.058   **INMATE RIGHTS AT CENTER DISCIPLINE COMMITTEE HEARING (RRC'S)**   SEPER
MAR 94
**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

## Marvin Gardens
Facility

As an inmate charged with a violation of Center rules or regulations referred to the Discipline Committee for disposition , you have the following rights:

1.  The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Center Discipline Committee;

2.  The right to have a member of the staff who is reasonably available represent you before the Center Discipline Committee;

3.  The right to call witnesses and present documentary evidence in your behalf, provided Center safety would not be jeopardized;

4.  The right to remain silent.  Your silence may be used to draw an adverse inference against you.  However, your silence alone may not be used to support a finding that you committed a prohibited act;

5.  The right to be present throughout the Center Discipline Committee hearing except during Committee deliberations and except where Center safety would be jeopardized;

6.  The right to be advised of the Center Discipline Committee recommendation and Bureau of Prisons' decision, the facts supporting the recommendation and decision, except where Center safety would be jeopardized, and the disposition in writing; and,

7.  The right to contest under Administrative Remedy procedures or by letter the Bureau of Prisons' decision to the Regional Director within 20 days of notice of the decision and disposition.

I hereby acknowledge that I have been advised of the above rights afforded me at a Center Discipline Committee hearing.

Signed: _____   Reg. No.: _____   Date: _____

Notice of rights given to Inmate on  **7/7/10**   by _____
                                         Date                        Employee Signature

---

**INMATE RIGHTS AT CENTER DISCIPLINE COMMITTEE HEARING (RRC's)**

## Marvin Garden
Facility

When an inmate has been advised of the rights afforded at a Center Discipline hearing, but refuses to sign the acknowledgment, the following should be completed.

I have personally advised **Yeoman, Stephen 43263-112** of the above rights afforded
                         Inmate's name and Register No.
at a Center Discipline Committee hearing, however, the inmate refused to sign the acknowledgment.

Signed: _____

**Kim Fowler**
(Employee's Typed Name)

**7/7/10**
(Date)

BP-A208.073
MAR 1994

**CENTER DISCIPLINE COMMITTEE REPORT (CCC'S)**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| Name of Inmate | Register Number | Hearing Date |
|---|---|---|
| Yagman, Stephen | 43263-112 | 07/08/2010 |

| Date of Incident | Date of Incident Report | Prohibited Act(s) Code |
|---|---|---|
| 06/22/2010 | 06/29/2010 | 112 |

Summary of Charge(s)

Use of any narcotics, marijuana, or related paraphernalia not prescribed for the individual by medical staff.

## I. NOTICE OF CHARGE(S)

|  | Date | Typed Name/Signature DHO |
|---|---|---|

A.  Advance written notice of charges (copy of incident report) was given to inmate on

07/02/2010  at  11:24 A.m  by Katherine Turner
_____  _____
Date              Time

B.  The CDC Hearing was held on  07/08/2010  at  4:00 p.m
                               _____      _____
                               Date                   Time

C.  The inmate was advised of his rights before this CDC by Kim Fowler-Case Manager

on  07/07/2010  and a copy of the advisement of rights form is attached.
    _____
    Date

## II. STAFF REPRESENTATIVE

A.  Inmate waived right to staff representative: (Yes/No/NA)
    Yes

B.  Inmate requested staff representative and N/A  _____ appeared.

C.  Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that
    N/A

## III. PRESENTATION OF EVIDENCE

A.  Inmate has been advised of his right to present a statement or to remain silent, to present documents, including written statements of unavailable witnesses, and for relevant and material witnesses to appear in his behalf at the hearing.
    Inmate admits/denies the charge(s).
    Admits charges

B.  Summary of Inmate Statement:
    Inmate stated that he unwittingly took a medication (Donnatal) that contains a barbiturate, the medication was taken for intestinal spasms.

C.  Witnesses:
    1.  The inmate requested witnesses: (Yes/No/NA) Yes
    2   The following persons were called as witnesses at this hearing and appeared:
    N/A

    3.  A summary of testimony of each is attached: (Yes/No/NA)
    4.  The following persons requested were not called for the reason(s) given:
    John Uyeda is no longer a Cornell employee. Could not jeoapardize center safety by calling Monitor Turner to testify, see written attach.
    5.  Unavailable witnesses were requested to submit written statements and those statements were considered:
        (Yes/No/NA) Yes, Ms. Turner.

D.  Documentary Evidence: In addition to the Incident Report and Investigation, the Committee considered the following documents:
    Toxicology Report, chain of custody, intake form signed by Yagman and Chief of Security Uyeda, medical documents from Yagman.

E.  Confidential information was considered by the CDC and not provided to inmate
    (Yes/No/NA) N/A

CDC Evidence
Yagman, Stephen
Reg. # 43263-112

## V. Specific Evidence Relied on to Support the Findings.

It should be noted that the Incident Report was not served to you within 24 hrs of the offense as it resulted in a return to custody and you were deemed a flight risk. A waiver for that part of the process is attached. You were served with a copy of the Incident Report when the Marshals service returned to you to close custody on 7/2/10 at 11:24 a.m. This did not prevent you from presenting a defense. It is also noted that on section 4 of the Incident Report the date was entered incorrectly as was the time on section 5. The date of the incident was 6/22/10 at 8:10 p.m. when you submitted the positive UA sample. This did not change the fact that specimen #733081 that you submitted to the security staff member tested positive for Barbiturates and Phenobarbital.

The CDC finds you guilty of violating Code 112; Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by medical staff. The CDC considered the written account of the reporting staff member. "At 9:35 a.m. on 6/29/10, Job developer, Jeannifer Del Campo was pulling the Specimen disposition sheets from the Redwood Toxicology Laboratory website. The lab results indicated a positive test result for (Barbiturates confirmed Phenobarbital) for specimen # 733081. A Review of the Chain of Custody record for Specimen #733081 indicated that inmate Yagman, Stephen Reg. #43263-112 submitted the UA specimen on 6/22/10 at 8:10 p.m. to Monitor Staff John Rutherford. A review of the medication log indicates inmate Yagman was not approved for any medication that would produce a positive for the substances. Based on the above information, Yagman, Stephen Reg. # 43263-112 is being cited for violation of code # 112, Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff.

The CDC considered your statement, "John Uyeda never advised me I could not take prescription medication or gave me written rules that said that, and I took a Donnatal on either 6/21/10 or 6/22/10 for intestinal pain." The CDC also considered the documentation submitted by you, a prescription for Donnatal dated 4/10/06 from Geller, Rudnik, Bush & Bamberger, M.D.'s.

The CDC gave less weight to your statement, "John Uyeda never advised me I could not take prescription medication or gave me written rules that said that, and I took a Donnatal on either 6/21/10 or 6/22/10 for intestinal pain." The CDC also gave less weight to your documentation submitted by you, a prescription for Donnatal dated **4/10/06** from Geller, Rudnik, Bush & Bamberger, M.D.'s.

The CDC gave more weight to the reporting staff member's statement that you tested positive for barbiturates/Phenobarbital, the positive Redwood Toxicology Laboratory report on Specimen #733081, the Marvin Gardens Medication policy signed by John Uyeda and Stephen Yagman on 5/13/10 during intake screening and finally your own admission that you took a "Donnatal" on or about 6/21/10 or 6/22/10. The CDC also gave more weight to the fact that you never submitted any prescription medication to staff for review and or approval prior to use

Therefore based on the information stated above, you are found guilty of violating Code 112; Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by medical staff.

BP-E208 (Continued)

## IV. FINDINGS OF THE COMMITTEE

☑ a. The act was committed as charged.

☐ b. The following act was committed:

☐ c. No prohibited act was committed: Expunge according to your Statement of Work.

## V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS

See attached.

## VI. SANCTION RECOMMENDATION

1) Return to close custody.
2) Loss of 75% Good conduct time.

## VII. REASON FOR SANCTION RECOMMENDATION

Hopefully by returning Yagman to a more secure setting and pulling good time this will discourage this type of behavior in the future.

## VIII. APPEAL RIGHTS

The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal under the Administrative Remedy Procedure or by letter within 20 days of the imposition of the sanction to the Regional Director. A copy of this report has been given to the inmate.

## IX. DISCIPLINE COMMITTEE

| Chairperson | Member | Member |
|---|---|---|
| *[signature]* | | |

## X. ACTION BY DHO

| Typed Name/Signature  -  DHO | Date |
|---|---|
| | |

END FORM



Cornell Companies, Inc.

**CORNELL**

MEMORANDUM

Date: 07/09/10

To whom this may concern,

I, Katherine Turner, served resident Yagman, Stephen Reg. # 43263-112 an incident report on 07/02/10 at 11:24a.m regarding violation of code # 112 which was issued to him by Jeannifer Del Campo on 06/29/10.  This incident report was served to Mr. Yagman while he was detained by the US Marshals.

If you have any questions or concerns regarding this matter, feel free to contact my supervisor Mike Reed or myself.

Katherine Turner

Cornell Companies Marvin Garden Center, 9411 South Central Avenue
Los Angeles, CA 90002
323-563-1126 • Fax 323-563-8890

## MEDICATION POLICY

1.    No medication prescription or non-prescription; over-the-counter inhalers, protein powder, vitamins, throat lozenges, aspirin, eye drops, foot powder, medicated creams; or any other medications may be taken to your room without staff approval.

2.    All medications prescription or non-prescription must be turned into staff at the time you sign into the facility.

3.    Medications approved for a resident to keep in personal possession will be tagged and returned to resident.  Any medication labeled as "HOT" will be maintained in the Control Center locked in the medicine cabinet.

4.    Any medical items which staff has not tagged as approved items will be considered contraband and confiscated upon discovery.  Disciplinary action may follow.

**REMEMBER DO NOT TAKE ANY MEDICATION OR MEDICAL ITEMS TO YOUR ROOM WITHOUT STAFF APPROVAL.**

## HARASSMENT REPORTING PROCEDURES

In the event you ever feel physically and/or sexually threatened by a resident or staff member, contact the Facility Director immediately.  If the Facility Director is not available, inform available staff that it is an emergency and you need to speak with the Facility Director.

RESIDENT SIGNATURE _____ DATE _5/13/10_

STAFF SIGNATURE _____ DATE _5/13/10_

Individual Intake
Cornell Companies, Marvin Gardens Facility

- 10 -

TOXICOLOGY
LABORATORY
3650 Westwind Blvd., Santa Rosa, CA 95403

# Federal Bureau of Prisons / chain of custody for drug analysis

**RESULTS NAME AND ADDRESS:**

Marvin Gardens Center (105) - Client
9411 South Central Avenue
Los Angeles, CA  90002

**SPECIMEN NUMBER:** 733081

**ACCOUNT NUMBER:** 60072

**SPECIAL TESTS REQUESTED:**
[ ] NIDA Basic + PCP, THC, Meth & Creat        [ ] 647 EtG

**INSTITUTION CODE:** 9 m 6

**INSTITUTION SECURITY LEVEL (check one):**
☐ 01—Minimum   ☐ 02—Low   ☐ 03—Medium
☐ 04—High   ☐ 05—Administrative   ☒ 06—Community

1. To the extent possible, urine samples should be collected in one or two centralized areas of the institution, e.g. Lieutenant's office or R & D, by staff who are thoroughly familiar with the procedures specified below.

2. Inmates shall be thoroughly searched to detect any device designed to provide a urine substitute or possible contaminant and will thoroughly wash their hands prior to providing the sample. Prior to collecting the sample, a staff member shall complete all blocks of the Chain of Custody form **except** for Time Provided and Collector and Inmate Certification.

3. When the inmate reports for testing, staff shall make a positive picture identification of the inmate; shall collect a specimen from the inmate under direct observation; shall complete time provided information; shall ensure that the specimen bottle is tightly capped; and shall affix a label containing the specimen number to the Urine Surveillance Log. Ordinarily, to be submitted for testing, bottles should be full.

4. The inmate shall verify that the specimen numbers (i.e. barcode numbers) on the Chain of Custody form, on the peel-off barcode, and on the numbered label to be affixed to the Urine Surveillance Log are identical.

5. After verification, the collector shall affix the barcode and security seals to the specimen bottle. The inmate shall be asked to initial the security seal and to read and sign the Inmate Certification Statement.

6. The staff member collecting the specimen shall read and sign the Collector Certification Statement. If the inmate refuses to sign the Inmate Certification or initial the security seal, a second staff member shall also sign the Collector Certification and shall initial the security seal.

7. After samples are collected, they shall be maintained under direct staff observation until moved to a locked area where they may be stored until mailing. This area shall be designated by the Urine Surveillance Program Coordinator and should be one which is accessible to a very limited number of staff and to no inmates.

8. All samples shall be sent to Redwood Toxicology Laboratory no later than the first work day after they are collected.

9. When a positive result is received, an incident report shall be written unless medical staff indicates a positive result is due to authorized medication. A photocopy of both the laboratory report and the Chain of Custody form (retained at the institution) containing the inmate's name, registration number and specimen number shall be attached to the incident report and made part of the disciplinary record.

**TEST REASON:**
☒ 01—Random   ☐ 02—Suspect   ☐ 03—Community   ☐ 04—Disruptive Group   ☐ 05—Saturation Group Testing   ☐ 06—Prior Use

**INMATE NAME:** (Last, First, I.)   Yagman  Stephen
**REGISTER #:** 43263 - 112

**DATE COLLECTED:** 6-22-10   **TIME REQUESTED:** 810 AM/PM   **TIME PROVIDED:** 8:10 AM/PM

**COLLECTOR CERTIFICATION:** I certify that the specimen identified on this form is the specimen presented to me by the inmate providing the certification below, that it bears the same identification number as set forth above, and that it has been collected, labeled and sealed in accordance with the collection procedures provided above.

John Rutherford
Staff Member Collecting Specimen (Last, First, I.)        Staff Member's (Collector) Signature

**INMATE CERTIFICATION:** I certify that the specimen accompanying this form is my own and that I provided it to the collector. Further, I certify that the specimen was sealed in my presence and that the information on this form and label is correct

Stephen Yagman
Second Witness Signature (To be completed by second staff member if inmate declines to sign.)        Inmate's (Donor's) Signature



Apply ►
Barcode
vertically
on bottle.

Seal

PLY 1   Send to Drug Surveillance Program Coordinator

URINE COLLECTOR PROCEED TO BE    STAFF COMPLETES    COMPLETES

**REDWOOD TOXICOLOGY LABORATORY**

3650 Westwind Blvd., Santa Rosa, CA 95403
Phone: 707-577-7959 // 800-255-2159
Fax: 707-577-8365
www.redwoodtoxicology.com

Marvin Gardens Center (105) - Client
9411 South Central Avenue
Los Angeles, CA 90002

| ACCOUNT NUMBER | ACCESSION NUMBER |
|---|---|
| 60072 | 100624-13465 |

| IDENTIFICATION |
|---|
| 733081 Req# 733081 |

| ORDERED BY |
|---|
| Marvin Gardens Center (105) - Client |

| NOTES |
|---|
| |

| COLLECTED |
|---|
| 6/22/2010 |

| RECEIVED | REPORTED |
|---|---|
| 6/24/2010 | 6/28/2010 |

| POSITIVES | TEST | RESULT |
|---|---|---|
| | Creatinine | 151.6 mg/dL |
| | Opiates | None Detected |
| | Benzodiazepines | None Detected |
| POS ---------> | Barbiturates | Positive |
| POS ---------> | 500 ng/mL Cutoff<br>Confirmed as Phenobarbital by GC/MS | Positive |
| | Methadone | None Detected |
| | Phencyclidine (PCP) | None Detected |
| | Cocaine (Benzoylecgonine) | None Detected |
| | THC (Marijuana)<br>EIA cutoff level is 20 ng/ml. | None Detected |
| | Amphetamines | None Detected |

NOTE: Phenobarbital = 581 ng/mL.

The results for this specimen have been tested in accordance with all Redwood Toxicology Laboratory standard operating procedures and have been reviewed by laboratory certifying scientists.

Chief Toxicologist: Wayne Ross, M.C.L.S.

100624-13465        6/29/2010 8:18:54 AM

Laboratory Directors:
Mark J. DeMeo, M.D.
Richard R. Wilber, M.D.

Specimen disposition: Specimens will be disposed as follows: Negatives: destroyed within 2 days; Positives: destroyed after 6 months; all methadone maintenance urines after 2 months.



**YAGMAN & YAGMAN & REICHMANN**
723 Ocean Front Walk
Venice, CA 90291
(310) 452-3200

| Send to: Kevin Kency | From: Marion R. Yagman |
|---|---|
| Attention | Date: July 9, 2010 |
| Office location: | Office location: |
| Fax number: 323-563-2164 | Phone number: (310) 397-4714<br>Fax: 310-397-0611 |

Re: Stephen Yagman,

Dear Mr. Kency: Attached please find a copy of a prescription for Donnatal Extentabs prescribed by Dr. Michael Bush for Stephen Yagman, which I obtained as part of Mr. Yagman's medical records.
Marion R. Yagman

---

## CONFIDENTIALITY NOTICE

This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. This communication contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution, or other use of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by fax or by telephone and destroy all forms of this communication.

# YAGMAN & YAGMAN & REICHMANN
723 Ocean Front Walk
Venice, CA 90291
(310) 452-3200

| | |
|---|---|
| Send to: Walgreen's Pharmacy. | From:  Marion R. Yagman |
| Attention: James | Date: July 7, 2010 |
| Office location: | Office location: |
| Fax number:  (310) 823-7175 | Phone number: (310) 397-4714<br>Fax:  310-397-0611 |

Re: Stephen Yagman, dob: 12/19/1944;
    Home address:  723 Ocean Front Walk Venice, CA 90291

Dear James:  Attached is Stephen Yagman's handwritten authorization for the release of his prescriptions. Mr. Yagman filled his prescriptions at Walgreen prior to May 2008. Because the authorization is not written on your standard form, the record of Mr. Yagman's prescriptions can be sent to his home address listed with you.  Mr. Yagman needs to have his prescription records immediately, and it would be appreciated if Mr. Yagman could receive copies of his prescriptions filled at Walgreen at your earliest convenience.  Thank you.
Marion R. Yagman

---

## CONFIDENTIALITY NOTICE

This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. This communication contains information that may be privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution, or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by fax or by telephone and destroy all forms of this communication.

# AUTHORIZATION FOR RELEASE OF MEDICAL PRESCRIPTIONS

I, STEPHEN YAGMAN, hereby authorize the release of any and all medical prescriptions filled by Walgreens during the period 2000 to the present date to my attorney in fact, Marion R. Yagman, of Yagman & Yagman & Reichmann. Copies of this Authorization shall be as valid as originals.

Stephen Yagman  07/04/10
STEPHEN YAGMAN

TRANSMISSION VERIFICATION REPORT

```
                                    TIME   : 07/07/2010 09:23
                                    NAME   :
                                    FAX    :
                                    TEL    :
                                    SER.#  : BROK3J753289
```

```
DATE,TIME          07/07  09:22
FAX NO./NAME       13108237175
DURATION           00:00:56
PAGE(S)            02
RESULT             OK
MODE               STANDARD
```

## YAGMAN & YAGMAN & REICHMANN
723 Ocean Front Walk
Venice, CA 90291
(310) 452-3200

| Send to: Walgreen's Pharmacy. | From: Marion R. Yagman |
|---|---|
| Attention: James | Date: July 7, 2010 |
| Office location: | Office location: |
| Fax number: (310) 823-7175 | Phone number: (310) 397-4714<br>Fax: 310-397-0611 |

Re: Stephen Yagman, dob: 12/19/1944;
    Home address: 723 Ocean Front Walk Venice, CA 90291

Dear James: Attached is Stephen Yagman's handwritten authorization for the release of his prescriptions. Mr. Yagman filled his prescriptions at Walgreen prior to May 2008. Because the authorization is not written on your standard form, the record of Mr. Yagman's prescriptions can be sent to his home address listed with you. Mr. Yagman needs to have his prescription records immediately, and it would be appreciated if Mr. Yagman could receive copies of his prescriptions filled at Walgreen at your earliest convenience. Thank you. Marion R. Yagman

### CONFIDENTIALITY NOTICE

**YAGMAN & YAGMAN & REICHMANN**
723 Ocean Front Walk
Venice, CA 90291
(310) 452-3200

| Send to: Dr. Bush | From:  Marion R. Yagman |
|---|---|
| Attention  Maryann | Date: July 7, 2010 |
| Office location: | Office location: |
| Fax number: (310) 652-4317 | Phone number: (310) 397-4714<br>Fax: 310-397-0611 |

Re: Stephen Yagman, dob: 12/19/1944;

Attached is Stephen Yagman's handwritten authorization for the release of his medical records. Dr. Paul Geller was Mr. Yagman's primary physician, but he also saw Dr. Bush on several occasions. We only need Stephen Yagman's medical records from 2004 onwards, and if they are not in storage, I would appreciate it if you could fax them to the above fax number today. Thanks. Marion R. Yagman

---

### CONFIDENTIALITY NOTICE

This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed.  This communication contains information that may be privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution, or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by fax or by telephone and destroy all forms of this communication.

## MEDICAL AUTHORIZATION

To whom this may concern:

I, STEPHEN YAGMAN, hereby authorize Marion R. Yagman, my attorney in fact, to have full access to and to obtain or make copies of, any and all of my medical records and prescriptions. Copies shall be as valid as originals, of this original authorization

STEPHEN YAGMAN 07/04/10

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME : 07/07/2010 09:57
                                    NAME :
                                    FAX  :
                                    TEL  :
                                    SER.# : BROK3J753289
```

```
DATE,TIME          07/07  09:56
FAX NO./NAME       13106524317
DURATION           00:00:30
PAGE(S)            02
RESULT             OK
MODE               STANDARD
                   ECM
```

## YAGMAN & YAGMAN & REICHMANN
723 Ocean Front Walk
Venice, CA 90291
(310) 452-3200

| Send to: Dr. Bush | From:  Marion R. Yagman |
|---|---|
| Attention  Maryann | Date: July 7, 2010 |
| Office location: | Office location: |
| Fax number: (310) 652-4317 | Phone number: (310) 397-4714<br>Fax: 310-397-0611 |

Re: Stephen Yagman, dob: 12/19/1944;

Attached is Stephen Yagman's handwritten authorization for the release of his medical records.  Dr. Paul Geller was Mr. Yagman's primary physician, but he also saw Dr. Bush on several occasions.  We only need Stephen Yagman's medical records from 2004 onwards, and if they are not in storage, I would appreciate it if you could fax them to the above fax number today.  Thanks.  Marion R. Yagman

**CONFIDENTIALITY NOTICE**

**This communication and any files or documents attached to it are intended only for the use**

# YAGMAN & YAGMAN & REICHMANN
723 Ocean Front Walk
Venice, CA 90291
(310) 452-3200

| Send to: CVS Pharmacy. | From:  Marion R. Yagman |
|---|---|
| Attention: Elisabeth | Date: July 7, 2010 |
| Office location: | Office location: |
| Fax number: (401) 216-3362 | Phone number: (310) 397-4714<br>Fax: 310-397-0611 |

Re: Stephen Yagman, dob: 12/19/1944;
   Home address: 723 Ocean Front Walk Venice, CA 90291

Dear Elizabeth:  Further to our telephone conversation today, enclosed please find  Stephen Yagman's authorization to receive copies of his prescriptions, which you advised me you will mail to his home address, which is listed above.  Thank you.  Marion R. Yagman

---

## CONFIDENTIALITY NOTICE

**This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed.  This communication contains information that may be privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution, or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by fax or by telephone and destroy all forms of this communication.**

AUTHORIZATION FOR
RELEASE OF MEDICAL PRESCRIPTIONS

I, STEPHEN YAGMAN, hereby authorize the release of any and all medical prescriptions filled by CVS pharmacy, or any of its predecessors, such as Savon, during the period 2000 to the present date to my attorney in fact, Marion R. Yagman, of Yagman & Yagman & Reichmann. Copies of this Authorization shall be as valid as (Sy) originals.

STEPHEN YAGMAN 07/04/10

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────┘
```

```
                                            TIME   :  07/07/2010 00:00
                                            NAME   :
                                            FAX    :
                                            TEL    :
                                            SER.# :  BROK3J753289
```

```
┌──────────────────────────────────────────────────────────────────────┐
│                                                                        │
│   DATE,TIME                      07/07  07:59                          │
│   FAX NO./NAME                   14012163362                           │
│   DURATION                       00:00:29                              │
│   PAGE(S)                        02                                    │
│   RESULT                         OK                                    │
│   MODE                           STANDARD                              │
│                                  ECM                                   │
│                                                                        │
└──────────────────────────────────────────────────────────────────────┘
```

## YAGMAN & YAGMAN & REICHMANN
### 723 Ocean Front Walk
### Venice, CA 90291
### (310) 452-3200

| Send to: CVS Pharmacy. | From: Marion R. Yagman |
|---|---|
| Attention: Elisabeth | Date: July 7, 2010 |
| Office location: | Office location: |
| Fax number: (401) 216-3362 | Phone number: (310) 397-4714<br>Fax: 310-397-0611 |

Re: Stephen Yagman, dob: 12/19/1944;
   Home address: 723 Ocean Front Walk Venice, CA 90291

Dear Elizabeth:  Further to our telephone conversation today, enclosed please find  Stephen Yagman's authorization to receive copies of his prescriptions, which you advised me you will mail to his home address, which is listed above.  Thank you.  Marion R. Yagman

---

### CONFIDENTIALITY NOTICE

**This communication and any files or documents attached to it are intended only for the use**

FROM WEB MD

# BELLATAL ER Oral

Important Note: The following information is intended to supplement, not substitute for, the expertise and judgment of your physician, pharmacist or other healthcare professional. It should not be construed to indicate that use of the drug is safe, appropriate, or effective for you. Consult your healthcare professional before using this drug.

## BELLADONNA ALKALOIDS / PHENOBARBITAL - ORAL

**PRONUNCIATION: (bell-a-DON-a al-KA-loyd/fee-noe-BAR-bi-tal)**
Review this Drug3 User Reviews

**USES**



- **Who should not take BELLATAL ER Oral?**

### BELLATAL ER ORAL USES
This product contains several medications: belladonna alkaloids (made up of the drugs hyoscyamine, atropine, and scopolamine) and phenobarbital. Belladonna alkaloids help to reduce the symptoms of stomach and intestinal cramping. They work by slowing the natural movements of the gut and by relaxing the muscles in the stomach and intestines. Belladonna alkaloids belong to a class of drugs known as anticholinergics/antispasmodics. Phenobarbital helps to reduce anxiety. It acts on the brain to produce a calming effect. Phenobarbital belongs to a class of drugs known as barbiturate sedatives.
OTHER USES: This section contains uses of this drug that are not listed in the approved professional labeling for the drug but that may be prescribed by your health care professional. Use this drug for a condition that is listed in this section only if it has been so prescribed by your health care professional. This drug may also be used to relieve the symptoms of irritable bowel syndrome.

### How to use BELLATAL ER Oral
Take this medication by mouth as directed by your doctor. If you are taking the immediate-release tablets or liquid form of this medication, take it usually 3 to 4 times a day or as directed by your doctor.
If you are using the liquid, carefully measure the dose using a special measuring device/spoon. Do not use a household spoon because you may not get the correct dose.
If you are taking the extended-release tablets, take them usually every 12 hours or as directed by your doctor. Swallow the extended-release tablets whole. Do not crush, chew, or break the tablets. Doing so can release all of the drug at once, increasing the risk of side effects.
Antacids lower the absorption of this medication. If you are taking an antacid, take it at least 2 hours apart from this medication.
The dosage is based on your medical condition and response to treatment. In children, the dosage is also based on weight.
Do not increase your dose or take this drug more often without your doctor's approval. Your condition will not improve any faster and the risk of serious side effects may increase.
This medication may cause withdrawal reactions, especially if it has been used regularly for a long time or in high doses. In such cases, withdrawal symptoms (such as anxiety, muscle twitching, shakiness, dizziness, worsening weakness, nausea, vomiting) may occur if you suddenly stop using this medication. Withdrawal from the phenobarbital can be severe and include seizures and (rarely) death. To prevent withdrawal reactions, your doctor may reduce your dose gradually. Consult your doctor or pharmacist for more details, and report any withdrawal reactions immediately.
When this medication is used for a long time, it may not work as well. Your doctor may need to increase your dose or change your medication. Talk with your doctor if this medication stops working well.
Along with its benefits, this medication may rarely cause abnormal drug-seeking behavior (addiction). This risk may be increased if you have abused alcohol or drugs in the past. Take this medication exactly as prescribed to lessen the risk of addiction.
Tell your doctor if your condition persists or worsens.

# REGISTRATION    GELLER, RUDNICK, BUSH & BAMBERGER
## A MEDICAL CORPORATION

PLEASE PRINT

Date: 08/02/04                                          Home Phone _____    Cell: _____

Patient Name ___YAGMAN___    ___STEPHEN___
                 Last Name          First Name          Middle Initial

Responsible Party if minor _____

Street Address   723 Ocean Front Walk

City  Venice Beach          State CA          Zip 90291-3220

E-Mail _____    Driver's License # _____

BILLING ADDRESS IF DIFFERENT _____

---

Sex  ✓ M  __F   Age ___  Birthdate 12/19/44        Single   Married   Widowed   Seperated   Divorced

Patient Employed by   Yagman & Yagman & Reichmann

Business Address   Same as above

Occupation   Lawyer                        Business Phone (310) 492-3200

Spouse Name (or responsible party) _____        Birthdate _____

Business Name & Address _____

Occupation _____                    Business Phone _____

Who is responsible for this account? Stephen Yagman    Relationship to patient  Self

Social Security # 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            Spouse Social Security # _____

In case of emergency who should we notify? _____        Phone _____

Relationship _____            Address _____

Who referred you to our practice?  long-time patient

Do you have medical insurance? ___No  ✓Yes  If Yes, complete insurance info below.

Name/address of Primary Insurer  Blue Cross    (800) 333-0912

    Group #  PPO              Subscriber #  XDL073A61563

Name/address of Secondary Insurer (if any)  Claims:   Box 60007, LA CA 90060

    Group # _____      Subscriber # _____

---

## ASSIGNMENT AND RELEASE

I, the undersigned, have insurance coverage with, Blue Cross _____ and assign directly to Drs. Geller, Rudnick, Bush and Bamberger all medical benefits, if any, otherwise payable to me for services rendered. I understand that I am financially responsible for all charges whether or not paid by insurance. I hereby authorize the doctor to release all information necessary to secure payment of benefits. I authorize the use of this signatur on all my medical insurance submissions.

___(signature) Stephen Yagman___        08/02/04
Signature of Insured/Guardian                Date

## MEDICARE AUTHORIZATION

I request that payment of authorized Medicare benefits be made either to me or on my behalf to Drs. Geller, Rudnick, Bush and Bamberger for any services furnished me by these physicians. I authorize any holder of medical information about me to release to the Health Care Financing Administration and its agents any information needed to determine these benefits or the benefits payable for related services. I understand my signature requests that payment be made and authorizes release of medical information necessary to pay the claim. If "other health insurance" is indicated in item 9 of HCFA 1500 form, or elsewhere on other approved claim forms or electronically submitted claims, my signature authorizes releasing information to the insurer or agency shown.

_____            _____
Beneficiary Signature              Date

## MEDICATIONS-STEPHEN YAGMAN 03-31-08

*Avapro, 300 mg., (heart) every morning before eating
*Lipitor, 80 mg., (heart, high blood pressure) every morning before eating
*Hydrochlorothiazide, 25 mg. (heart, diuretic) every morning before eating
*Levothyroxine, 0.150 mg. (low thyroid disease) every morning before eating
*Metoprolol Succ ER, 100 mg. every evening before going to sleep
Nexium, 40 mg. (stomach/duodenal ulcers and antral spots), as needed (is allergic to Prilosec and it is ineffective)
Hydrocodine/APAP (Vicodin), 5/500 tablet, every four hours when needed for back pain
Diazepam (Valium), 10 mg., when needed for tension
Flurazepam (Dalmane), 30 mg., as needed at bedtime
Prochlorperazine (Compazine), 10 mg., as needed when nauseous
Bellatal ER (Donnatal), as needed for stomach cramping
Carisoprodol Compound Tab AMP (Soma Compound), muscle relaxant as needed
Clotrimazole and Betamethasone Dipropionate Cream USP, twice daily to groin, when needed
Ambien CR, as needed, for sleep
Lidocaine Hydrochloride Oral Topical solution USP 2% 100 ml. viscous

# DRUGS.COM

## What's inside Bellatal ER

**Bellatal ER Active Ingredients:** atropine sulfate, hyoscyamine sulfate, phenobarbital, scopolamine hydrobromide, *details*.

### Bellatal ER Dosages & Strengths

| Strength | Format | Route | Strength | Class |
|---|---|---|---|---|
| Bellatal ER 0.0582 mg-0.3111 mg-48.6 mg-0.0195 mg | tablet, extended release | oral | 1.0 each | OTC |

### Drug Information For: BELLATAL ER TABLETS

**Ingredient Name:** ATROPINE (A-troe-peen), HYOSCYAMINE (hye-oh-SYE-a-meen), SCOPOLAMINE (skoe-POL-a-meen), and PHENOBARBITAL (fee-noe-BAR-bi-tal)

**Drug Manufacturer:** QUALITEST

**Common Uses:** This medicine is an antispasmodic and barbiturate combination used to relieve stomach and intestinal spasms and cramping. It may also be used to treat other conditions as determined by your doctor.

**Before Using This Medicine:** Some medicines or medical conditions may interact with this medicine. INFORM YOUR DOCTOR OR PHARMACIST of all prescription and over-the-counter medicine that you are taking. ADDITIONAL MONITORING OF YOUR DOSE OR CONDITION may be needed if you are taking quinidine, anticoagulants, corticosteroids, birth control pills, theophylline, valproic acid, doxycycline, metronidazole, or medicine for high blood pressure or heart conditions (beta blockers) or for emotional conditions (phenothiazines). Inform your doctor of any other medical conditions, allergies, pregnancy, or breast-feeding. USE OF THIS MEDICINE IS NOT RECOMMENDED if you have a history of megacolon or porphyria. Contact your doctor or pharmacist if you have any questions or concerns about using this medicine.

**How to Use This Medicine:** Follow the directions for using this medicine provided by your doctor. SWALLOW WHOLE. Do not break, crush, or chew before swallowing. Take this medicine on an empty stomach unless instructed otherwise by your doctor. STORE THIS MEDICINE at room temperature in a tightly-closed container, away from heat and light. IF YOU MISS A DOSE OF THIS MEDICINE, take it as soon as possible. If it is almost time for your next dose, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

**Cautions:** THIS MEDICINE WILL ADD TO THE EFFECTS of alcohol and other depressants. Ask your pharmacist if you have questions about which medicines are depressants. THIS MEDICINE MAY CAUSE drowsiness or dizziness. Do not drive, operate machinery, or do anything else that could be dangerous until you know how you react to this medicine. THIS MEDICINE MAY REDUCE SWEATING. Use caution to not become overheated while you are taking this medicine. FOR WOMEN TAKING BIRTH CONTROL PILLS: this medicine may decrease the effectiveness of your birth control pills. To prevent pregnancy, use an additional form of birth control while you are taking this medicine. FOR WOMEN: THIS MEDICINE HAS BEEN SHOWN TO CAUSE HARM to the human fetus. IF YOU PLAN ON BECOMING PREGNANT, discuss with your doctor the benefits and risks of using this medicine during pregnancy. THIS MEDICINE IS EXCRETED IN BREAST MILK. DO NOT BREAST-FEED while taking this medicine.

**Possible Side Effects:** SIDE EFFECTS, that may go away during treatment, include dizziness; drowsiness; dry mouth or throat; blurred vision; changes in taste perception; decreased sweating; dry skin or nose, or constipation. If they continue or are bothersome, check with your doctor. CHECK WITH YOUR DOCTOR AS SOON AS POSSIBLE if you experience vomiting or difficulty urinating. If you notice other effects not listed above, contact your doctor, nurse, or pharmacist. This is not a complete list of all side effects that may occur. If you have questions about side effects, contact your healthcare provider. Call your doctor for medical advice about side effects. You may report side effects to FDA at 1-800-FDA-1088.

**Overdose:** If overdose is suspected, contact your local poison control center or emergency room immediately. Symptoms of overdose may include headache, nausea, vomiting, blurred vision, dilated pupils, hot and dry skin, drowsiness, dizziness, difficulty swallowing, seizures, and loss of consciousness.

**Additional Information:** DO NOT SHARE THIS MEDICINE with others for whom it was not prescribed. DO NOT USE THIS MEDICINE for other health conditions. KEEP THIS MEDICINE out of the reach of children. IF USING THIS MEDICINE FOR AN EXTENDED PERIOD OF TIME, obtain refills before your supply runs out.

Copyright 2010 Wolters Kluwer Health, Inc.



# MEMORANDUM

| | |
|---|---|
| **DATE:** | **7/28/10** |
| **TO:** | **Wes Mayhew-CCM.** |
| **FROM:** | **Mike Reed- Director** *m. Reed* |
| **CC:** | **File** |
| **SUBJECT:** | **Yagman-43263-112   CDC waiver** |

Inmate Yagman was considered a flight risk due to his offense resulting in a return to close custody. As a result, the Incident Report was not served to him within 24 hrs of the incident. We respectfully request a waiver for that part of the CDC process.



Cornell Companies, Inc. · *Marvin Gardens Center* · 9411 S. Central Ave. Los Angeles California 90002
323-563-1126 · Fax 323-563-2164 · www.cornellcompanies.com

```
REGISTER NO: 43263-112  NAME..: YAGMAN, STEPHEN
FUNCTION...: DIS        FORMAT: CHRONO    LIMIT TO ____ MOS PRIOR TO 08-02-2010
                        RSP OF: LOS-LOS ANGELES MDC
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2046414 - SANCTIONED INCIDENT DATE/TIME: 06-29-2010 0935
CDC HEARING DATE/TIME: 07-28-2010 1306
FACL/LOC/CHAIRPERSON.: CLB/9MG/MCWILLIAMS
REPORT REMARKS.......: POSITIVE DRUG TEST.
   112   USE OF DRUGS/DRUG ITEMS - FREQ: 1
         DIS GCT    / 40 DAYS / CS
         COMP:010 LAW:P   DISALLOWED 40 DAYS GCT.
         TRANSFER   / CS
         COMP:    LAW:    TRANSFER TO A SECURE FACILITY TO BETTER CONTROL.




G0002        MORE PAGES TO FOLLOW . . .
```

-40-

# Exhibit C

```
  LOSG2        *        INMATE DISCIPLINE DATA        *    10-04-2010
PAGE 001 OF 001 *  CHRONOLOGICAL DISCIPLINARY RECORD   *    14:01:38

REGISTER NO: 43263-112 NAME..: YAGMAN, STEPHEN
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO    MOS PRIOR TO 10-04-2010

-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2046414 - SANCTIONED INCIDENT DATE/TIME: 06-29-2010 0935
CDC HEARING DATE/TIME: 07-28-2010 1306
FACL/LOC/CHAIRPERSON.: CLB/9MG/MCWILLIAMS
REPORT REMARKS.......: POSITIVE DRUG TEST.
    112  USE OF DRUGS/DRUG ITEMS - FREQ: 1
         DIS GCT   / 40 DAYS / CS
         COMP:010 LAW:P   DISALLOWED 40 DAYS GCT.
         TRANSFER  / CS
         COMP:    LAW:    TRANSFER TO A SECURE FACILITY TO BETTER CONTROL.
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1975506 - SANCTIONED INCIDENT DATE/TIME: 02-05-2010 0945
UDC HEARING DATE/TIME: 02-10-2010 1808
FACL/UDC/CHAIRPERSON.: BUT/CAMP/L.C. SPEER
APPEAL CASE NUMBER(S): 579018
REPORT REMARKS.......: UDC FOUND THAT HE COMMITTED THE PROHIBITED ACT
    317  FAILING TO FOLLOW SAFETY REGS - FREQ: 1
         LP COMM   / 90 DAYS / CS
         COMP:    LAW:    LOSS OF COMMISSARY FROM 02-11-2010 THRU 05-11-2010
         LP PHONE  / 90 DAYS / CS
         COMP:    LAW:    LOSS OF PHONE FROM 02-11-2010 THRU 05-11-2010
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1887405 - SANCTIONED INCIDENT DATE/TIME: 06-30-2009 0945
UDC HEARING DATE/TIME: 07-08-2009 0850
FACL/UDC/CHAIRPERSON.: BUT/CAMP/FORTE
APPEAL CASE NUMBER(S): 547057
REPORT REMARKS.......: INMATE FOUND GUILTY OF CODE (305) POSSESSING ANYTHING
                       NO AUTHORIZED.
    305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
         LP PHONE  / 30 DAYS / CS
         COMP:    LAW:    LOSS OF PHONE PRIVILEGES FROM 07-08-09 THRU
                         08-07-2009.




  G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```